United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KING.COM LIMITED,

        Plaintiff,

  v.

6 WAVES LLC; SIX WAVES INC.,

        Defendants.
_____/

No. C-13-3977 MMC

**ORDER DENYING MOTION TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS**

      Before the Court is defendants 6 Waves LLC ("LLC") and Six Waves Inc.'s ("SWI") motion to dismiss on grounds of forum non conveniens, filed November 1, 2013. Plaintiff King.com Limited ("King.com") has filed opposition, to which defendants have replied. Having read and considered the parties' respective written submissions, the Court rules as follows.[1]

**BACKGROUND**

      Plaintiff King.com is a Malta corporation with an office in San Francisco. Defendant SWI is a British Virgin Islands corporation headquartered in Hong Kong. Defendant LLC is a Delaware corporation that had, until recently, an office in San Mateo, California.[2] All

---

      [1] By order filed January 15, 2014, the Court took the motion under submission.

      [2] On January 9, 2014, after briefing was complete, King.com filed a Motion for Administrative Relief for Leave to File Surreply to Address Facts Newly Introduced by Defendants, in which King.com seeks to address, inter alia, LLC's departure from this

1   parties design and distribute internet-based games.

2        The instant action arises from defendants' distribution of two internet-based games,

3   Farm Epic and Treasure Epic, through Facebook, Inc.'s ("Facebook") internet gaming

4   platform, which distribution, King.com alleges, violates its U.S. copyrights in its own games,

5   Farm Heroes Saga and Pet Rescue Saga.  (See First Amended Complaint ("FAC") ¶¶ 31,

6   79.)  By the instant complaint, King.com alleges a single cause of action for "Federal

7   Copyright Infringement."

8        Defendants now move to dismiss the case, based on the doctrine of <u>forum non</u>

9   <u>conveniens</u>, arguing the People's Republic of China ("China") is the "best forum for

10   King.com's claims."  (See Mot. 1:11.)

11   **LEGAL STANDARD**

12        The doctrine of <u>forum non conveniens</u> is based on "the inherent power of the courts

13   to decline jurisdiction in exceptional circumstances"; it is, however, "a drastic exercise of

14   the court's inherent power because, unlike a mere transfer of venue, it results in the

15   dismissal of a plaintiff's case."  <u>See Carijano v. Occidental Petroleum Corp.</u>, 643 F.3d 1216,

16   1224 (9th Cir. 2011) (internal quotation and citation omitted).  Consequently, the doctrine is

17   treated as "an exceptional tool to be employed sparingly, and not a doctrine that compels

18   plaintiffs to choose the optimal forum for their claim."  <u>See id.</u>

19        A party seeking a dismissal on grounds of <u>forum non conveniens</u> must demonstrate:

20   (1) the existence of an adequate alternative forum; and (2) that the balance of relevant

21   private and public interest factors favors dismissal.  <u>See Creative Technology, Ltd. v.</u>

22   <u>Aztech System PTE, Ltd.</u>, 61 F.3d 696, 699 (9th Cir. 1995).

23        The first requirement, an adequate alternative forum, ordinarily will be satisfied

24   _____

25   district, which occurred between the filing of King.com's opposition to defendants' motion to
     dismiss and the filing of defendants' reply thereto, and was raised in the first instance in the
     reply.  Although, as defendants concede, it may well have been proper for King.com to

26   address by surreply such changed circumstance, the proposed surreply, as defendants
     point out, "goes far beyond" (see Opp'n to Admin. Relief at 1:6-8) that subject, by

27   reiterating arguments made in King.com's opposition and responding to defendants'
     reponsive arguments in what could become a "never-ending round of briefing" (see id. at

28   3:14).  Accordingly, the Motion for Administrative Relief is hereby DENIED.

when the defendant is "amenable to process" in the foreign jurisdiction.  See Piper Aircraft

Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981).  Nevertheless, where the remedy provided

by the other forum is so unsatisfactory that it is, in essence, no remedy at all, this initial

requirement will not be satisfied; where, for example, the foreign forum does not permit

litigation of the subject matter of the dispute, dismissal would not be appropriate.  See id.  A

showing that the applicable foreign law is merely less favorable to the plaintiff, however,

ordinarily will not be given substantial, let alone conclusive, weight in the forum non

conveniens inquiry.  See id. at 247.  Put another way, although a court may dismiss on

forum non conveniens grounds "even though the foreign forum does not provide the same

range of remedies as are available in the home forum," the alternative forum "must provide

some potential avenue for redress."  See Creative Tech., 61 F.3d at 701-02.

With respect to the second requirement, the private interest factors are "(1) the

residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3)

access to physical evidence and other sources of proof; (4) whether unwilling witnesses

can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability

of the judgment; and (7) all other practical problems that make trial of a case easy,

expeditious and inexpensive."  See Boston Telecomm. Group, Inc. v. Wood, 588 F.3d

1201, 1206-07 (9th Cir. 2009).  The public interest factors are "(1) the local interest in the

lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and

juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a

particular forum."  See id. at 1211 (internal quotation and citation omitted).

Once the relevant private and public interest factors have been considered, "the

standard to be applied to a motion for dismissal on the ground of forum non conveniens is

whether defendants have made a clear showing of facts which establish such oppression

and vexation of a defendant as to be out of proportion to plaintiff's convenience."  See

Ravelo Monegro v. Rosa, 211 F.3d 509, 514 (9th Cir. 2000) (internal quotation, citation,

and alterations omitted).

**DISCUSSION**

**A.    Alternative Forum in Foreign Country**

As noted, the first requirement, an alternative forum, ordinarily will be satisfied when the defendant is "amenable to process" in the other jurisdiction.  <u>Piper Aircraft Co.</u>, 454 U.S. at 254 n.22.  Here, defendants state "LLC would . . . be willing to submit to jurisdiction in China," (<u>see</u> Mot. at 7 n.4) and that "SWI, too, consents to jurisdiction in China" (<u>see</u> Reply at 4 n.1).

In response, King.com has submitted evidence to show that, despite defendants' willingness to submit to jurisdiction in China, a Chinese court is unlikely to hear a case involving non-Chinese parties concerning claims of infringement in the United States brought under United States copyrights.  (<u>See</u> Hu Decl. ¶ 17.)  As defendants note, however, an order of dismissal could be conditioned upon the acceptance of King.com's case by a Chinese court.  Consequently, the Court finds the possibility that the case might not be accepted does not itself render the forum inadequate.

King.com next offers evidence that under Chinese law a software game program is treated as a literary work, the copyright as to which protects "the literal code in which [the game] is written," and that, "[h]istorically, Chinese law has not included 'look and feel' as part of the copyright of software programs."  (<u>See</u> Young Decl. ¶ 44.)  Because the infringement allegations at issue here are directed at the visual similarity between King.com's games and defendants' games, King.com argues, it "may not even have a claim" under Chinese copyright law.  (<u>See</u> Opp'n at 12:5-6.)  Defendants counter with evidence that, in a case involving computer games, China's highest court recently issued a decision, which, as summarized by defendants, found "nearly identical look and feel would be enough to support an inference of infringement even though, in the court's analysis, this was not explicitly authorized in the provisions of software-related regulations upon which plaintiff had relied and which emphasized similarity of code."  (<u>See</u> Supplemental deLisle Decl. ¶ 29.)  The Chinese court's decision, although not precedential (<u>see</u> Hu Decl. ¶¶ 10, 15), suggests there is "some potential avenue for redress" (<u>see</u> <u>Creative Tech.</u>, 61

4

F.3d 702), in China.

King.com further submits evidence that damages recoverable in China are likely to be less than those recoverable in the United States (see Hu Decl. ¶ 31; Young Decl. ¶ 31), and that any injunction would not cover infringing distribution in the United States (see Young Decl. ¶ 30).  An adequate alternative forum, however, need not provide "the same range of remedies as are available in the home forum"; rather, it "must provide some potential avenue for redress."  See Creative Tech., 61 F.3d at 701-02 (finding Singapore adequate alternative forum despite territorial limitations of Singapore Copyright Act, which limited amount of damages and scope of injunction).

Lastly, King.com points to general attributes of the Chinese legal system, which, it argues, makes China an "unsuitable alternative forum" (see Opp'n 13:4), in particular, that it is a civil law country where court decisions "are not based on precedent" (see Hu Decl. ¶ 22), that certain forms of discovery are not available (see Young Decl. ¶¶ 22-29), that "adjudication committees" made up of judges appointed by the legislature may decide or reconsider the judgment in "important and complex cases" (see Hu Decl. ¶ 22), and that certain Chinese authorities have the prerogative to intervene in court proceedings (see id. ¶ 23); King.com also offers an expert's opinion that China has "inadequa[te]" intellectual property "protection and enforcement" (see id. ¶ 24).  Numerous federal and state courts, however, including the Supreme Court, see Sinochem Intern. Co. v. Malaysia Intern. Shipping Corp., 549 U.S. 422, 435-36 (2007), have found China and its judicial system to be an adequate alternative forum.  See DeLisle Decl. ¶¶ 60-62 (collecting sixteen cases in which China was found to be adequate alternative forum, including intellectual property cases and cases in which opposing party was linked to Chinese state); see also DeLisle Suppl. Decl. ¶ 6 (noting "[a]ll of the Chinese courts that U.S. courts have found to be adequate alternative forums have adjudication committees").

Accordingly, the Court finds defendants have demonstrated an alternative forum exists in China.

1

2

**B.     Private Interest Factors**

        **1.     Residence of Parties and Witnesses**

3      Plaintiff King.com is a Malta corporation with its sole American office in San

4  Francisco.  Defendant SWI is a British Virgin Islands corporation headquartered in Hong

5  Kong.  Defendant LLC, a subsidiary of SWI, is a Delaware corporation that King.com

6  alleges to be an alter ego of SWI and was based in San Mateo, but which shut down

7  operations on December 15, 2013, after the filing of the instant motion and opposition

8  thereto (see Chow Decl. ¶ 11),[3] and which, according to defendants, has never performed

9  "any services or support related to Farm Epic or Treasure Epic such as design, production,

10  marketing, promoting, customer support, or community management" (see Tung Decl.

11  ¶ 8).[4]  No party is a resident of the proposed alternative forum, China.

12      Although ordinarily there exists a "strong presumption" in favor of the plaintiff's

13  choice of forum, the presumption applies with less force when the plaintiff is foreign.  See

14  Piper Aircraft Co., 454 U.S. at 255.  "[L]ess deference," however, "is not the same thing as

15  no deference."  See Ravelo, 211 F.3d at 514.

16      Consequently, the Court finds the residence of the parties weighs slightly against

17  dismissal.  The Court next turns to the residence of witnesses.

18      In that regard, defendants include as evidence a list of forty-eight people

19  "responsible for the conception, design, development, coding, testing, deployment, and

20  operation of Farm Epic and Treasure Epic" (see Chen Decl. ¶ 10), all of whom reside in

21  China and work at Beijing You Mai Hu Dong Technology Co. Limited ("Beijing You Mai"),

22

23

24

25

      [3] King.com has filed various objections to the evidence submitted by defendants.  To the extent the Court has relied on any such evidence herein, the objections are overruled. To the extent the Court has not relied on such evidence, the objections are not further addressed herein.

26

27

28

      [4] King.com disputes LLC's lack of involvement with the allegedly infringing games, citing promotional emails King.com received "from a 6waves entity that identified its location as . . . San Mateo, California . . . at the same address" as is identified in the complaint for LLC (see Kelly Decl. ¶ 4), as well as court filings and websites (see id. ¶¶ 16, 18, 23-24) in which SWI and its subsidiaries have "held [themselves] out as a single enterprise" (see Opp'n at 5:26-27; Kelly Decl. ¶¶ 16, 18).

1   which is not a party to this litigation but which developed all aspects of Farm Epic and

2   Treasure Epic and is a wholly owned subsidiary of Hong Kong-based 6waves Limited

3   ("LTD"), itself a subsidiary of defendant SWI (see Chen Decl. ¶¶ 7, 8, 10).  In addition,

4   defendants list three SWI employees, all of whom are located in Hong Kong and have

5   "knowledge of the funding, distribution, marketing, community management, and customer

6   support for the games."  (See id. ¶ 11.)

7          The focus of this private interest analysis, however, does "not rest on the number of

8   witnesses in each locale"; rather, "the court should evaluate the materiality and importance

9   of the anticipated witnesses' testimony and then determine their accessibility and

10  convenience to the forum."  See Boston Telecomm., 588 F.3d at 1209 (internal quotation,

11  citation, and alterations omitted) (finding district court, after considering parties' respective

12  showings as to witnesses' residences and availability, abused its discretion in holding

13  "private interest factor was neutral when [defendant] provided very little information that

14  would have enabled the district court to understand why various witnesses were material to

15  his defense").  Here, the above-referenced list of Beijing You Mai employees, despite its

16  length, "sheds no . . . light on the relative importance of [the listed] witnesses to

17  [defendants'] defense."  See id. at 1210.

18         Although the list includes a column titled "Responsibilities/Knowledge," the

19  categories thereunder are phrased broadly (see Chen Decl. ¶ 10 (describing

20  "Responsibilities/Knowledge" as, e.g., "[i]ntegration of games with third-party networking

21  platform"; "[d]rawing/artwork of in-game characters"; and "[d]evelopment of in-game user

22  interface")), many of the responsibilities are attributed to multiple individuals, and

23  defendants do not explain how any particular individual would be material to their defense.

24  Further, although one might surmise that some of the listed defendants may be relevant to

25  provide evidence of, for example, "independent creation," see Three Boys Music Corp. v.

26  Bolton, 212 F.3d 477, 486 (2000) (noting "[b]y establishing reasonable access and

27  substantial similarity, a copyright plaintiff creates a presumption of copying," after which

28  "[t]he burden shifts to the defendant to rebut that presumption through proof of

1    independent creation"), defendants' list gives no indication as to how many of the listed

2    witnesses might be necessary, or even useful, to its defense.  Indeed, defendants

3    acknowledge that "many of [the listed witnesses] have overlapping information" and are not

4    necessarily "proper witnesses in any copyright case brought by King.com."  (See Mot. 15

5    n.7.)

6         Similarly, while the three Hong Kong-based witnesses have titles that suggest a

7    broader knowledge and authority than the Beijing-based witnesses (see Chen Decl. ¶ 11

8    (listing witness titles as "Regional Finance Manager," "Executive Director, Growth," and

9    "Senior Manager, Community"), defendants give no indication as to how these individuals'

10   "Responsibilities/Knowledge" are material to defendants' copyright infringement defense,

11   but, rather, assert that such individuals, along with the forty-eight other individuals, "merely

12   . . . constitute the full set of a defendant's potential witnesses in any case involving the

13   accused games" (see id. 17 n.8) (see Mot. 17 n.8).

14        By contrast, King.com identifies five of its employees as "key witnesses," one

15   residing in San Francisco, as well as two each in London and Sweden (see Kelly Decl.

16   ¶ 32) who "regularly visit the San Francisco office" (Moy Decl. ¶ 9).  Although King.com's

17   description of two of those five employees is general in nature (see Kelly Decl. ¶ 32

18   (describing two employees as "Producer[s]" who have "knowledge regarding the

19   development of," respectively, Farm Geroes Saga and Pet Rescue Saga)), it does provide

20   more useful information as to the remaining three.  In particular, King.com describes how

21   one of its two London-based employees as well as its San Francisco-based employee

22   would give testimony relevant to the issue of damages, the former as Chief Marketing

23   Officer, with respect to the "market performance" of the Saga Games and the "impact of . . .

24   the Epic Games" on that performance (see Kelly Decl. ¶ 32), and the latter as Vice

25   President of Partnerships and Business Operations, with respect to the "distribution" and

26   "market performance" of the Saga Games and the "impact of [defendants'] distribution of

27   the Epic Games on that performance" (see id.; see also Moy Decl. ¶¶ 25-26 (describing

28   personal knowledge of "harm that [defendants'] infringement is causing to [King.com] in the

1   United States"; estimating "monthly losses"); in addition, on the issue of liability, King.com

2   states that one of its Swedish-based employees, its Chief Creative Officer, has "knowledge

3   regarding the creation and originality of the Saga Games" (see id.).  Further, King.com

4   asserts, it expects defendants' former CEO (and current President), who resides in this

5   district, to be a key witness regarding defendants' "strategy in . . . the creation and

6   distribution" of the allegedly infringing games, and, "since he is regularly identified as the

7   head of the [defendants'] various . . . entities and is positioned to know about their

8   collective control," regarding King.com's alter ego allegations as well.  (See Kelly Decl.

9   ¶ 33.)

10         King.com also offers evidence that relevant non-party witnesses are located in the

11   San Francisco area.  In that regard, King.com submits evidence that certain proprietary

12   data about the performance of its and defendants' games and the users of those games,

13   including country specific data, data from beta features, and payment information, relevant

14   to both liability and damages, is only available from Facebook (see Moy Decl. ¶ 17), and,

15   consequently, expects that a witness from Facebook will be a "key witness" in King.com's

16   case (see Opp'n 15:7-10).

17         In light of the above, the Court finds the residence of witnesses weighs against

18   dismissal.

19         Accordingly, this factor weighs against dismissal.

20                      **2.    Forum's Convenience to Litigants**

21         With respect to the forum's convenience to litigants, defendants offer evidence that

22   there are frequent non-stop flights between Hong Kong and Beijing, the travel time is only a

23   few hours, and that "[f]or most of [SWI's] staff, travel between Hong Kong and Beijing is

24   also simpler from an immigration perspective to obtain the proper visas."  (See Chow Decl.

25   ¶ 4.)  As King.com notes, however, given that it does not maintain an office in China but

26   does maintain an office in San Francisco, to require King.com to bring its case in Beijing

27   would simply shift the burden of appearing in court from defendants to King.com, and also

28   would require King.com to retain local Chinese counsel and translate all its documentary

1   evidence into Chinese.  (See Hu Decl. ¶ 25.)  In addition, both parties are represented by

2   attorneys whose offices are in San Francisco.

3           Accordingly, this factor weighs against dismissal.

4           **3.      Access to Physical Evidence and Other Sources of Proof**

5           With respect to documents and other physical evidence, defendants submit a

6   declaration that relevant "design and development documents, licensing agreements,

7   source code, and other documents are located in or are readily accessible from Beijing You

8   Mai's offices in Beijing," and "documents and records concerning funding, advertising,

9   licensing, and marketing of the games" are located in the Hong Kong offices of either SWI

10  or LTD.  (See Chen Decl. ¶ 12.)  Additionally, to the extent such evidence is located in

11  China, defendants argue King.com will encounter "legal and practical difficulties" in

12  compelling its production in the United States.  (See Mot. 14:22.)  In particular, defendants'

13  expert explains that, although China is a party to the Hague Evidence Convention, where

14  evidence is located in China, requests to compel evidence pursuant to letters rogatory or

15  letters of request "'have not been particularly successful in the past.'" (See deLisle Decl.

16  ¶ 98 (quoting "prior version" of U.S. Department of State's webpage on "China Judicial

17  Assistance").)

18          According to King.com, however, Hong-Kong based SWI has control over Beijing

19  You Mai, and defendants do not contend otherwise.  (See Reply 3:23-28; Chen Decl. at ¶ 7

20  (describing Beijing You Mai as "wholly owned subsidiary" of LTD and LTD as "subsidiary" of

21  SWI).)  Consequently, as King.com points out, defendant can be required to produce

22  documents and other physical evidence in China.  See Fed. R. Civ. P. 34(a) (providing for

23  production of documents and other physical evidence in other party's "possession, custody,

24  or control"); United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO, 870

25  F.2d 1450, 1452 (9th Cir. 1989) (defining "control" under Fed. R. Civ. P. 34(a) as "the legal

26  right to obtain documents upon demand"; noting "[a] corporation must produce documents

27  possessed by a subsidiary that the parent corporation owns or wholly controls").

28

10

1  Additionally, King.com has submitted a declaration that important third-party

2  documentary evidence is located in this district at the headquarters of Facebook (see Moy

3  Decl. ¶ 17; Kelly Decl. ¶ 31), and defendants make no showing that the production of such

4  evidence can be compelled by a Chinese court.

5  Accordingly, this factor weighs against dismissal.

6  **4.  Whether Unwilling Witnesses Can Be Compelled to Testify**

7  Defendants submit evidence that "China does not permit American attorneys in

8  China to take depositions for use in foreign courts."  (See deLisle Decl. ¶ 99 (quoting U.S.

9  Department of State's webpage on "China Judicial Assistance").)  For the reasons

10  discussed above with respect to document production, however, it would appear that the

11  Beijing You Mai employees who reside in China are under the control of SWI and thus

12  could be brought by SWI to Hong Kong[5] or the United States for deposition.  See Lueck v.

13  Sundstrand Corp., 236 F.3d 1137, 1146 (9th Cir. 2001) (noting where documents and

14  witnesses are under control of parties, "they can be brought to court, no matter the forum");

15  see also Wright & Miller, Standard in Considering Transfer–Convenience and Location of

16  Witnesses, 15 Fed. Prac. & Proc. Juris. § 3851 (4th ed.) (noting, regarding standard for

17  transfer of venue, "convenience of witnesses who are employees of a party is entitled to

18  less weight because that party can obtain their presence at trial").  While defendants' expert

19  states it "can be difficult or impossible for Chinese citizens to secure a passport and to

20  receive permission to leave China" (see DeLisle Decl. ¶ 100), he concedes that "restrictions

21  have been greatly relaxed . . . in recent years" and that there are Chinese "who do not face

22  such impediments," although they may experience delays in obtaining visas (see id.).

23  Defendants make no showing that any Beijing You Mai employee who might be called as a

24  witness would face any particular difficulty, either from the Chinese government

25

26  [5] See Hong Kong SAR China, U.S. Department of State's Bureau of Consular

27  Affairs, http://travel.state.gov/content/travel/english/legal-considerations/judicial/
country/hong-kong-sar-china.html (last updated Nov. 15, 2013) (noting "[v]oluntary

28  depositions may be taken in Hong Kong regardless of the nationality of the witness" by
"private attorneys from the United States").

1    or for personal reasons, if required to travel either to Hong Kong or the United States,

2    where depositions can be taken.  Moreover, as discussed above, defendants have not

3    explained the materiality of any particular Beijing You Mai employee to their defense.

4         Further, of the witnesses King.com identifies as important to its case, those residing

5    outside the United States live in Hong Kong and are employed by defendants in managerial

6    and directorial roles (see Kelly Decl. ¶ 34), and thus can be required to appear for

7    deposition in the instant case.  See Fed. R. Civ. P. 30(b)(1) (providing for notice of

8    deposition); Fed. R. Civ. P. 37(d)(1)(A)(i) (providing for sanctions were "a party's officer,

9    director, or managing agent . . . fails, after being served with proper notice, to appear for

10   that person's deposition").

11        Lastly, as discussed above, King.com has submitted evidence that it will need a

12   witness from Facebook (see Moy Decl. ¶ 17, Kelly Decl. ¶ 31), and that such witness's

13   testimony could not be compelled in China, see Mintel Learning Tech., Inc. v. Beijing Kaidi

14   Educ. & Tech. Dev. Co., 2007 WL 2403395 at *10 (N.D. Cal. Aug. 20, 2007) (finding non-

15   party witness residing in California could not be compelled to testify in China).

16        Consequently, the Court finds all witnesses whose materiality has been shown can

17   be compelled to testify in this forum.

18        Accordingly, this factor weighs against dismissal.

19                          **5.      Cost of Bringing Witnesses to Trial**

20        As noted, defendants argue it would be easier for their Hong Kong employees to

21   travel to China for trial rather than to the United States.  As discussed above, however,

22   defendants have not indicated how the those witnesses are material to its defense, and

23   King.com has shown it is more convenient and less costly for its relevant witnesses,

24   including third-party witnesses, to attend a trial in San Francisco rather than China.  Under

25   such circumstances, a trial in Beijing would simply shift the cost from defendants to

26   King.com.

27        Accordingly, this factor weighs against dismissal.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 6.    Enforceability of Judgment

King.com argues that, other than damages, the most significant remedy it seeks is an injunction to preclude defendants from continuing to distribute their games in the United States.  Although defendants present expert evidence that Chinese copyright law "does not state or imply any restriction to harms occurring in China or exclusion of remedies for acts of infringement that emanate from China and extend elsewhere" (see deLisle Decl. ¶ 21), King.com's expert states any injunction issued thereunder may well be unenforceable in China because no defendant is a resident of China and there is no showing that any defendant "has assets held in its name in China" (see Young Decl. ¶ 30).

Next, even if defendants are correct in their assumption that Beijing You Mai, a Chinese resident, would be added as a defendant were plaintiffs to bring their case in China, the two remaining defendants, as noted, are based, respectively, in Hong Kong and the United States, and King.com has submitted evidence that "Hong Kong courts have not historically enforced Mainland Chinese court judgments in copyright infringement cases" (see Hu Decl. ¶ 19), whereas "Hong Kong courts have respected and enforced U.S. court judgments, whether monetary or injunctive" (see id. ¶ 20).  Further, even if a money judgment entered by a Chinese court could be enforced in the United States against LLC, see, e.g. Hubei Gezhouba Sanlian Indus. Co. v. Robinson Helicopter Co., 2009 WL 2190187 (C.D. Cal. July 22, 2009) (enforcing Chinese money judgment pursuant to the Uniform Foreign Money-Judgments Recognition Act), neither party cites to any authority in which an injunction entered by a Chinese court has been enforced in the United States.

Lastly, as King.com points out, were a judgment to be entered by this Court, the payments made to Facebook by users of the allegedly infringing games could be garnished.  See 28 U.S.C. § 3205(a).

Accordingly, this factor weighs against dismissal.

### 7.    All Other Practical Problems That Make Trial Easy, Expeditious and Inexpensive

The parties do not address this factor, and the Court has not itself identified any

13

1    such issues.

2    **8.    Conclusion: Balance of Private Interest Factors**

3         As set forth above, the Court finds the private interest factors weigh against

4    dismissal.

5    **C.    Public Interest Factors**

6         **1.    Local Interest in Lawsuit**

7         Defendants argue there is no local interest in the instant controversy because

8    plaintiff King.com is a foreign corporation, the one local defendant, LLC, has shut down

9    and, in any event, never performed any work pertaining to the allegedly infringing games,

10   and, further, because over ninety percent of the users of defendants' games are located

11   outside the United States.  (See Mot. 18:16-21; Reply 4:15-22.)[6]  A district court, however,

12   "need not hold . . . that California is the principal locus of the case or that California has

13   more of an interest than any other jurisdiction in order to conclude that California has a

14   meaningful interest in the litigation."  Boston Telecomm., 588 F.3d at 1212.  Rather, as to

15   this factor, the court "ask[s] only if there is an identifiable local interest in the controversy."

16   Id. (finding California had interest in case where plaintiff's "claims [were] rooted in a course

17   of conduct that took place over several years and in multiple locations around the globe,

18   including California").

19        Here, as King.com points out, California has an interest in curbing instrastate

20   copyright infringement.  In the instant case, although the allegedly infringing games were

21   developed in China, the distribution of the games was solely through Facebook, which is

22   headquartered in this district, and revenues from the distribution of the games were

23   collected through Facebook.  Additionally, as noted, the plaintiff, King.com, maintains an

24   office here.  Further evidencing the state's interest are articles about the instant case,

25   published both locally and nationally and submitted as exhibits by King.com, which reflect

26   the industry's concerns about infringement in the field of technology here at issue.  (See

27   _____

28        [6] Interestingly, as King.com points out, the allegedly infringing games cannot be
     played in China, as Facebook is "blocked" there.  (See Moy Decl. ¶ 30.)

1    Kelly Decl. Ex. Z.)

2          Accordingly, this factor weighs against dismissal.

3                    **2.    Court's Familiarity with Governing Law**

4          The instant lawsuit is predicated on defendants' alleged infringement of King.com's

5    United States copyrights and is brought exclusively under United States law.  Although

6    defendants argue that the U.S. Copyright Act is not applicable because the creation of the

7    allegedly infringing games occurred in China (see Mot. 18:22-26), the Act provides that the

8    unauthorized "[i]mportation into the United States . . . of copies . . . that have been acquired

9    outside the United States is an infringement of the exclusive right to distribute copies . . .

10   under [the Act]."  See 17 U.S.C. § 602.  Although "the Copyright Act does not 'reach acts of

11   infringement that take place entirely abroad,'" see Litecubes, LLC v. N. Light Prods., Inc.,

12   523 F.3d 1353, 1366 (Fed. Cir. 2008) (quoting Subafilms, Ltd. v. MGM-Pathe Commc'ns

13   Co., 24 F.3d 1088, 1098 (9th Cir. 1994) (en banc), here, King.com brings claims based on

14   infringing distribution alleged to have taken place within the United States (see FAC ¶¶ 28,

15   79, 82).

16         Accordingly, this factor weighs against dismissal.

17                   **3.    Burden on Local Courts and Juries**

18         No party argues the instant litigation would in any manner impose an undue burden

19   on the courts of this district.

20                   **4.    Court Congestion**

21         With respect to congestion, the issue "is not whether dismissal will reduce

22   congestion in California, but whether a trial will be quicker in China because its docket is

23   less crowded."  See Mintel Learning Tech., Inc., 2007 WL 2403395 at *10.  Defendants

24   argue "China does not have a problem with court congestion," and, according to

25   defendants' expert, "most cases proceed from court acceptance to resolution much more

26   quickly than is typical in the United States."  (See Mot. 11-13; deLisle Decl. ¶ 95.)

27   Defendants, however, provide no specific information as to the typical length of time from

28   filing to resolution in the United States, nor the length of time ordinarily required to resolve

                                                15

a case after acceptance in China.  Moreover, as King.com points out, were the case to be dismissed, any relative gain in its progression after acceptance would be negated by the time required for King.com to hire and work with local Chinese counsel and prepare and translate all court filings and relevant evidence.  (See Hu Decl. ¶ 25.)

Accordingly, this factor weighs against dismissal.

**5.  Costs of Resolving Dispute Unrelated to Forum**

As discussed, the instant action is not unrelated to this forum.

**6.  Conclusion: Balance of Public Interest Factors**

As set forth above, the Court finds the public interest factors weigh against dismissal.

**CONCLUSION**

For the reasons stated, defendants' motion to dismiss on grounds of forum non conveniens is hereby DENIED.

**IT IS SO ORDERED.**

Dated: March 31, 2014

MAXINE M. CHESNEY
United States District Judge